GOLD & STOCK TELEGRAPH Co. *v.* COMMERCIAL TELEGRAM Co. and
others.

(*Circuit Court, S. D. New York.*    April 1, 1885.)

.1. PATENTS FOR INVENTIONS—CALAHAN REISSUE FOR TELEGRAPHIC PRINTING IN-
    STRUMENTS FOR REGISTERING STOCKS—VALIDITY—INFRINGEMENT.
        Reissued letters patent No. 8,810, granted to plaintiff as assignee of Edward
    A. Calahan, January 25, 1870, for an improvement in telegraphic printing in-
    struments for registering prices of gold and stocks, construed, and the second
    claim thereof *held* infringed by the Field instrument used by defendants.

2. SAME—FOREIGN PATENT—LIFE OF UNITED STATES PATENT.
        Where a foreign patent is published after the issue of a patent in the United
    States, although it bears date previous to such issue, the life of the United
    States patent will not be affected.

3. SAME—SECOND CLAIM OF CALAHAN PATENT.
        The second claim of the reissued Calahan patent does not enlarge the orig-
    inal claim, and is valid.

In Equity.

*C. L. Buckingham* and *Dickerson & Dickerson,* for plaintiff.

*Samual A. Duncan* and *Roscoe Conkling,* for defendants.

SHIPMAN, J.    This is a bill in equity to restrain the defendants
from the infringement of reissued letters patent No. 3,810, granted
to the plaintiff, as assignee of Edward A. Calahan, January 25, 1870,
for an improvement in telegraphic printing instruments for registering
the prices of gold and stocks.    The original patent was dated April
21, 1868.    Upon the trial of the case, infringement of the second claim
only of the reissue was alleged.    The claim is in these words:

"Two or more type-wheels moving independently and controlled by mag-
netism, and arranged so as to print jointly or separately upon one strip of
paper in two or more lines, substantially as specified."

To understand and construe the claim which is in controversy, it
is important to know the state of the art at the date of the invention.
In this case the defendants took no testimony, and therefore the his-
tory of the art, so far as it relates to this claim, is to be learned from
the reference which was made to it in the cross-examination and sub-
sequent examination of the plaintiffs' expert.    The Theiler, French,
and the Johnson, English, patent for the Theiler invention, which
seems to be conceded to have embodied the state of the art at the
time of the Calahan invention, are not in evidence; but a general
statement, and one which will be sufficient, can be given of the extent
of the advance which Calahan made.

Theiler had a two-wheel instrument, the wheels being moved by one
electro-magnet, and being geared together, and necessarily rotating
together.    Letters were placed upon one wheel, and figures were
placed upon the other, and the letters were printed upon one line,
and the figures were printed upon another line, of the same tape by
depressing the corresponding type-wheel.    But it was necessary to

have complicated mechanism, so as to prevent impressions from one wheel when the other alone was being printed from. Calahan printed letters in one line, and figures in another line, of a tape by the aid of two type-wheels, one of which could be rotated to the exclusion of the other, and a single press-pad. His wheels moved or rotated independently of each other, while in the Theiler machine one wheel could not be moved without rotating the other. He says in his specification that his invention was intended, among other things, to dispense with the complicated mechanism theretofore made use of to cause an impression to be made when the type-wheel had been brought to a proper position, and describes his device as follows:

"A magnet and armature are employed in effecting the movement of the type-wheel, so that the same is turned to the required position, and then, by an independent motion separately controlled from that of the type-wheel, the impression is made, so that the type-wheel can remain after it is adjusted, or be again moved previous to the impression being made. The impression is made on a strip of paper by two type-wheels, so that the printing is in two lines, and the figures and fractions for denoting the prices or quotations are contained upon a wheel, and combined therewith. Letters are provided for printing on the same strip of paper, to denote the article to which the quotations relate. As the different machines will generally be but a short distance apart, it is preferred to make use of two or more wires communicating through the entire circuit of machines. One of these wires transmits the pulsations of electricity that act upon a magnet, and adjust the type-wheel to the proper letter or number. The other wire transmits the pulsations of electricity which, acting in a magnet, produce the impression upon the paper. In the drawings three circuit wires are represented: one for the alphabet-wheel, another for the number, or figure, wheel, and the third for giving the impression; but the number of wires employed is unlimited. * * * The two type-wheels, *k* and *l*, although on separate shafts, stand contiguous to each other, so as to be impressed separately or jointly upon the same strip of paper that is fed along beneath them, the impression from the respective wheels forming two different lines of printing. * * * Each of the wheels, *l* and *k*, has a blank space, that is turned towards the paper while the other wheel, only, is being printed from."

This blank space prevents the wheel, which for the time being it is not desired to print from, from making impressions on the paper.

The independent rotation of the type-wheels, as distinguished from type-wheels which must continuously and necessarily rotate together, is the principal feature of the invention of the second claim, and it is not a prerequisite to this independence of rotation that each wheel should be under the control of its own independent magnet. This is a feature of the Calahan machine, but it is not a part of the second claim. The claim requires that each type-wheel shall move or rotate by magnetic action independently of the other, and that it shall not be necessary to the movement of one that the other should at the same time be rotated also, and that a strip of paper and one impression-pad shall be moved up against the type-wheels by a magnet, so that impressions from the characters upon either or both wheels, may be made upon the strip of paper, and thus a message may be printed

exclusively from one wheel, or may be printed in two lines from the characters on both wheels,—that is, by the united or joint action of both wheels,—but it is not a requisite that this printing shall be done simultaneously.

The great contest in this case was in regard to the meaning of the word "jointly," the defendants insisting that it meant simultaneously, and the plaintiff insisting that it meant by united action, or acting in co-operation, and thus, that when there was occasion to use both letters and figures upon a single strip, as is usually the case in transmitting stock quotations, such printing could be done in two lines by the united or joint action of the two wheels. The latter is, in my opinion, the correct interpretation of the claim, for three reasons:

(1) The improvement, or the advance in the art, did not, in fact, consist in simultaneous printing. It did not remedy an existing evil, and was not the thing which the patentee apparently wanted to accomplish. (2) The patent does not mention simultaneous printing as a thing which the instrument was necessarily to do; it points out that the wheels were so arranged with reference to each other that they could be used on one strip of paper jointly or separately; that is, either or both could be used to make one message; and when both were used, the impression from the respective wheels formed different lines. The idea which the specification and the claim convey, is that the operator can use both wheels, and so a double-line message can be produced by their joint action, but there was no requirement that they must be used simultaneously. (3) While the Calahan instrument, before a unison device was added to it, had the capacity of simultaneous printing, such printing is not and was not supposed to be of practical value.

The defendants', or the Field, instrument has two wheels, one a figure wheel, and the other a letter wheel, on separate shafts, both controlled by magnetism, and each moving independently. The wheels print by their united action, in two lines, upon one strip of paper moved up by a press-pad, and can print by the use of either wheel separately. As in the Calahan machine, both wheels are provided with a blank space, which is turned towards the paper while the other wheel is being used to print from. The difference between the machine of the Calahan patent and the Field machine is that the latter has a device by which, after a wheel has ceased to print, it returns automatically to the zero point, and is locked there, before the other wheel can be rotated. In the opinion of the defendants, their machine is relieved from the charge of infringement because the wheels do not move independently and cannot print simultaneously. The latter suggestion is disposed of by the conclusion that the claim does not require such printing. The defendants say that their wheels do not move independently because it is a "condition of the rotation of one wheel that the other shall first be brought to a state of rest." This does not prevent independence of motion, in the sense in which Calahan used the term "independent." One wheel is not linked to the other so that both must rotate together, which is what he desired to avoid. Either wheel is rotated without thereby rotating or moving the other, a result which he desired to gain.

So far as is disclosed by the record, the allegation of infringement is sustained.

The next point is in regard to the duration of the Calahan patent, the defendants insisting that no injunction can issue, because the patent expired on March 16, 1885. William Edward Newton received, upon a communication from Elisha W. Andrews and Edward A. Calahan, an English patent for the Calahan invention, which was sealed on August 21, 1868, and dated March 16, 1868, the day on which the provisional specification, with the petition of Newton, was filed at the office of the commissioner of patents. The original United States patent to Calahan was dated April 21, 1868, and from the copy of the original patent which is in evidence it appears that the application must have been made as early as December 28, 1867.

The effect of the sixteenth section of the act of March 2, 1861, taken in connection with section 6 of the act of March 3, 1839, upon the duration of United States patents for an invention which had been previously patented abroad, had been frequently discussed, (*De Florez* v. *Raynolds*, 17 Blatchf. C. C. 436; S. C. 8 FED. REP. 434;) but I am not aware that it has been supposed that the sixth section of the act of 1839 related to patents which were issued by the United States before an English patent had been sealed and published. In this case the English patent was sealed five months after the patent in suit was issued, and although the English patent was, when published, dated March 16, 1868, I do not suppose that such date has any effect upon the life of the subsequently issued United States patent. It will also be noticed that the application for the United States patent was made before the provisional specification was filed in the office of the English commissioner of patents. The decision of Judges GRIER and KANE in *French* v. *Rogers*, 1 Fisher, Pat. Cas. 133, in 1851, was to the effect that a United States patent issued after the issue of the English patent, but applied for before the date of the application for the English patent, was not within the sixth section of the act of 1839. This point was left undecided by the supreme court in *O'Reilly* v. *Morse*, 15 How. 62, decided in 1853.

The second claim of the original Calahan patent was as follows:

"Two or more type-wheels separately controlled by magnetism, and arranged side by side, or with their axis on the same line, so as to be impressed jointly or separately on one strip of paper, substantially as and for the purposes set forth."

The second claim of the reissue does not enlarge the original claim; it is a more exact and more clearly defined statement of the invention than the original patent contained, but the original claim would probably have received the same construction.

There should be a decree for an injunction and an accounting. The terms of the decree will be settled upon hearing.