EMERSON, SMITH & Co., Limited, *v.* LIPPERT.

*(Circuit Court, W. D. Pennsylvania.* August 16, 1887.)

PATENTS FOR INVENTIONS—EFFECT OF FOREIGN PATENT.
　Upon application made May 31, 1871, letters patent of the United States, for an invention, were granted on February 6, 1872. On October 12, 1871, the inventor caused application to be made in England for letters patent for the same invention, and a provisional specification was then filed. Pursuant to this application, letters patent of Great Britain for said invention were sealed April 3, 1872, and dated October 12, 1871. The complete specification for the English patent was filed April 12, 1872, the same having been subscribed March 22, 1872. *Held*, that the invention was not "first patented, or caused to be patented," in England, within the meaning of the twenty-fifth section of the act of July 8, 1870, and that the life of the United States patent was not abridged by the antedating of the foreign patent.

In Equity. *Sur* plea.
*Wm. L. Pierce*, for complainants.
*Bakewell & Sons*, for defendant.

ACHESON, J. The plea goes to the right of the complainant to maintain its bill as to one of the patents sued on, viz., letters patent to James E. Emerson, No. 123,466; the allegation being that prior to the granting thereof the invention therein described and claimed had been patented, or caused to be patented, by said Emerson in Great Britain, and that this foreign patent, and hence also the patent in suit, had expired

on October 12, 1885, before the suit was brought.    The twenty-fifth section of the act of congress of July 8, 1870, (under which the patent sued on was issued,) provides "that no person shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, by reason of its having been first patented, or caused to be patented, in a foreign country: provided,   *   *   *   that the patent shall expire at the same time with the foreign patent, or, if there be more than one, at the same time with the one having the shortest term; * * *"

At the hearing of the plea the following recited facts were admitted or shown, viz.:   On May 31, 1871, James E. Emerson made application in the United States for letters patent for an improvement in saws, and in pursuance of this application letters patent of the United States No. 123,466, for said invention, were granted to Emerson on February 6, 1872, for the full term of 17 years.   On October 12, 1871, Joseph Ellicott Holmes, as agent for Emerson, made application in England for letters patent for said invention, and then filed in the office of the commissioners of patents for Great Britain a provisional specification.   Pursuant to this application, letters patent of Great Britain for said invention were granted to Holmes, and sealed April 3, 1872, and dated October 12, 1871.   The complete specification for the English patent was filed April 12, 1872, the same having been subscribed by the patentee on March 22, 1872.

The act which then regulated the granting of letters patent for inventions in Great Britain is that of July 1, 1852, (15 & 16 Vict. c. 83; 91 British St. at Large, 597.)   Referring to this act, it will be found that by its provisions the applicant for letters patent for an invention may file with his petition either a "provisional specification," i. e., one simply "describing the nature of the said invention," or a "complete specification."   If a complete specification is filed, the invention is not only protected for the term of six months from the date of application, but during that period the applicant is clothed with the "like powers, rights, and privileges" as if letters patent had already issued.   But, where a provisional specification is filed, it is to be referred to the law officer: who, if satisfied, will give a certificate of allowance to be filed in the office of the commissioners of patents; whereupon, for the said term of six months, "provisional protection" is secured to the applicant, i. e., during that term the invention may be "used and published, without prejudice to any letters patent to be granted for the same."   Within six months after application, upon the warrant of the law officer, the letters patent are to be granted; and they may be sealed and bear date as of the day of the actual sealing thereof, or of any other day between the day of application and the day of such sealing; "provided always that, save where such letters patent are granted for any invention in respect whereof a complete specification has been deposited upon the application for the same under this act, no proceeding at law or in equity shall be had upon such letters patent in respect of any infringement committed before the same were actually granted."   Id. 413, § XXIV.

The question now to be determined is whether before the granting to Emerson, on February 6, 1872, of letters patent of the United States, the Emerson invention had been patented in Great Britain, within the meaning of the twenty-fifth section of the act of 1870. I have no hesitation in holding that the invention had not been so patented. No opinion need be expressed as to the effect on the life of a United States patent of the previous filing in a foreign country of a complete specification, which, though in advance of the grant of the foreign patent, yet confers upon the applicant the like rights as if letters patent had actually issued. The court is not dealing with such a case. The filing of the provisional specification on October 12, 1871, had merely temporarily secured to Holmes "provisional protection," within the narrow limits of saving any letters patent to be thereafter granted from prejudice, by reason of the intermediate use and publication of the invention. Clearly, before the actual sealing of the English patent, on April 3, 1872, Holmes was not invested with any of the powers, rights, or privileges of a patentee. Nor is it a matter of any moment that the English patent was dated as of October 12, 1871. That date was an arbitrary one. It gave to the instrument no retrospective operation. Much less, then, is the life of the United States patent issued before the sealing of the foreign patent to be abridged by the antedating of the latter. *Telegraph Co.* v. *Telegram Co.*, 23 Fed. Rep. 340, 343.

In none of the cases relied on as sustaining the plea was the question here raised, passed on; nor do I find any decision inconsistent with the conclusion the court has reached. On the other hand, that conclusion perfectly accords with what Mr. Justice STRONG said in *Smith* v. *Goodyear Dental Vulcanite Co.*, 93 U. S. 498, viz.:

"Of the English patent of Charles Goodyear, it is enough to say that, though the provisional specification was filed March 14, 1855, the complete specification was not until the eleventh of September following. It was therefore on the last-mentioned date that the invention was patented."

The plea is overruled.