SOCIÉTÉ ANONYME POUR LA TRANSMISSION DE LA FORCE PAR L'ELECTRICITÉ v. GENERAL ELECTRIC CO.

(Circuit Court, S. D. New York.   November 14, 1899.)

PATENTS—VALIDITY—PRIOR FOREIGN PATENT.
A foreign patent, to affect a subsequent patent in the United States for the same invention, under Rev. St. § 4887, must have been one which conveyed substantive rights by granting a monopoly which the patentee could enforce in the courts;  and a provisional patent, issued under the law of Switzerland, which merely secures the applicant against the effects of publication for three years, and entitles him to a definitive patent on making the required proofs of the existence of either the article itself or a model thereof within that time, is not such a patent as is referred to in the statute.

Hearing on Bill and Plea.

Edmund Wetmore, for complainant.
C. L. Buckingham, for defendant.

[1] As to pleading in patent infringement suits, see note to Caldwell v. Powell, 19 C. C. A. 595.

COXE, District Judge. The bill alleges infringement of letters patent No. 553,469, granted January 21, 1896, to the complainant as assignee of Hutin and Leblanc for improvements in alternating current motors. The plea alleges that a Swiss patent, granted to the inventors for the same invention, lapsed before the United States patent was granted, or before an application containing the claims of the patent had been filed. The defendant seeks by this plea to bring the case within the doctrine of Huber v. Manufacturing Co., 148 U. S. 270, 13 Sup. Ct. 603. The keystone upon which the plea rests is the existence of a patent in Switzerland and its expiration on or about September 12, 1894. Section 4887, Rev. St. U. S., has reference only to inventions previously patented in a foreign country. If there was no foreign patent the statute has nothing on which to operate. A patent implies a grant from the sovereign power securing to the inventor, for a limited time, the exclusive right to make use and vend the invention; it conveys to the inventor substantive rights and secures to him a valuable monopoly which he can enforce for his own advantage either by using it himself or by conveying the privilege to others. He receives something tangible, something which has a present existing value which protects him from competition and is the source of gain and profit. An instrument which falls short of this, which gives only limited and temporary protection, which is but a condition precedent to the definitive grant, which conveys no monopoly or the right to proceed against infringers, is not the patent contemplated by the statute.

The document, dated September 12, 1891, issued to Hutin and Leblanc by the Swiss government, was not a patent in any true sense of the word. A patent was never issued for the reason that a model satisfactory to the Swiss officials was not produced. The patentees never had a monopoly in Switzerland. They could not sue infringers or exercise any of the rights of patentees. What they received was little more than a promise of a patent if they subsequently convinced the Swiss officials of their right to receive one. It no more conveyed to them the exclusive right to make, use and vend the invention in Switzerland than the promise to give a deed upon receiving the purchase price, at or before a specified date, conveys the fee of an estate in land. Without considering the patent law of Switzerland in extenso it seems entirely clear that no definitive patent can be granted there unless the invention is applicable to industry and is represented either by the object itself or a model thereof. Proof must be presented "that there exists a model of the object invented, or that the object itself exists, and as a model is considered an execution of the invention, or a plastic representation, clearly displaying the nature and object of the latter." It is impossible to read the Swiss law and patent-office procedure without being convinced that unless this proof is made a definitive patent is simply out of the question.

The Swiss law also provides for a provisional patent and its effect is thus described:

"The provisional patent has only the effect of assuring to its owner, during a period of three years to date from the day of the application, the right to obtain a definitive patent, notwithstanding the publicity which might have been given to the invention during the interval. The owner of a provisional patent shall have no right of action against persons who imitate or who utilize his invention.

"Before the expiration of the aforesaid period of 3 years the owner of the provisional patent must, by the performance of the formality prescribed by art. 14, clause 3, cause the delivery to him of a definitive patent, in default whereof the patent becomes forfeited."

The law further provides that if the inventor does not annex to his application for a definitive patent proof of the existence of a model, or the object itself, he can claim a provisional patent only which he can exchange for a definitive patent as soon as he furnishes such proof. If he makes the proof the date and hour when it is furnished shall be noted and "it is starting from this last date that the definitive protection assured to inventions shall commence." If he fails to make the proof within the prescribed period he forfeits his right to a patent. Hutin and Leblanc failed to furnish proof satisfactory to the Swiss officials and, consequently, never obtained a definitive patent. For this reason their provisional patent lapsed, the fact being noted as follows: "The patent was canceled on September 12, 1894, by reason of not furnishing the proof of a model." In the judgment of the court it is established beyond doubt that the document which the patentees obtained in Switzerland was not such a patent as is referred to in the United States statute and, therefore, that its abortive existence produced absolutely no effect upon the patent in suit.

The rule that the lapsing of a provisional grant, which has not ripened into a patent securing a monopoly does not destroy a United States patent is firmly established by many well-considered authorities. It is immaterial that these decisions relate to provisional patents emanating from other countries than Switzerland. So long as they possess the same characteristics the principle involved is the same. A British provisional patent is similar in its fundamental purpose to a Swiss provisional patent and it has been frequently held that such an instrument is not a patent within section 4887. Gold & Stock Telegraph Co. v. Commercial Telegram Co. (C. C.) 23 Fed. 340; Emerson, Smith & Co. v. Lippert (C. C.) 31 Fed. 911; Seibert Cylinder Oil Co. v. William Powell Co. (C. C.) 35 Fed. 591; Telephone Co. v. Cushman (C. C.) 57 Fed. 842; Edison Electric Light Co. v. Waring Electric Co. (C. C.) 59 Fed. 358.

The patentees are not estopped from showing the true character of the Swiss patent because of the formal statement in the preamble of the specification that a patent had been granted them in Switzerland. The facts are all before the court and this perfunctory statement cannot operate to transform a mere protection against publication into a definitive patent. Light Co. v. Bloomingdale (C. C.) 65 Fed. 213; Commercial Mfg. Co. v. Fairbank Canning Co. (C. C.) 27 Fed. 78. It follows that the plea must be overruled with costs; the defendant, on payment of costs, to have leave to answer within

30 days from the date of the order overruling the plea. Equity rule 34; Desty, Fed. Proc. (9th Ed.) pp. 1747, 1748; Walk. Pat. (3d Ed.) p. 453, and cases cited. In default of an answer the complainant is entitled to a decree.