MERRELL–SOULE CO. v. POWDERED MILK CO. OF AMERICA.

(Circuit Court of Appeals, Second Circuit.   March 9, 1915.)

No. 141.

1. PATENTS ⬤⟲328—VALIDITY AND INFRINGEMENT—METHOD OF DESICCATING MILK.

The Stauf patent, No. 666,711, for a method of desiccating milk, etc., was not anticipated, discloses patentable invention, and is entitled to a liberal construction; also *held* infringed.

2. PATENTS ⬤⟲66—RIGHT TO PATENT—PRIOR FOREIGN PATENT—"PATENTED" —"AUSGEGEBEN DATE."

An invention is not "patented" in a foreign country, within the meaning of Rev. St. § 4887 (Comp. St. 1913, § 9431), until the date of its actual issuance, which under the German law is the "ausgegeben," or publication, date.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81; Dec. Dig. ⬤⟲66.

For other definitions, see Words and Phrases, First and Second Series, Patented.]

Appeal from the District Court of the United States for the Western District of New York.

On appeal from an interlocutory decree holding valid and infringed the single claim of letters patent No. 666,711 granted to Robert Stauf for a method of desiccating milk, blood and the like and producing a dry powder therefrom. The patent was held valid and infringed by Judge Hazel ([D. C.] 215 Fed. 922). Subsequently Judge Ray upon an independent examination reached the same conclusion upon a motion for a preliminary injunction.

Archibald Cox and Robert W. Byerly, both of New York City, for appellant.

Livingston Gifford, of New York City, and Howard P. Denison and Eugene A. Thompson, both of Syracuse, N. Y., for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge.   [1] The patent is unusually clear, concise and brief in its statements and for present purposes may be sufficiently understood by reading the claim which is as follows:

"The process of obtaining the solid constituents of liquids such as blood, milk, and the like, in the form of powder, said process consisting in converting the liquid into a fine spray, bringing such spray or atomized liquid into a regulated current of heated air so that the liquid constituents are completely vaporized, conveying the dry powder into a suitable collecting-space away from the air-current, and discharging the air and vapor separately from the dry powder."

---

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The powder is produced by making very fine spray of the liquid and subjecting it to a desiccating process, when in that condition, by which the moisture is removed and the resulting product becomes a dry powder. The process takes place at a predetermined temperature. The apparatus for producing the result is a comparatively simple one. Air is forced into the supply pipe under pressure to the spray nozzles and thus draws the liquid to be operated upon—milk in the present case—from the vessels containing the milk, through tubes. It then projects the same in a finely atomized condition in oblique jets into the interior of a shaft-like casing, the lower part of which is provided with a source of heat. The air admitted through registers is heated by the source of heat and rises. The spray of atomized milk coming from the jets or nozzles mixes with the heated air and the watery constituents of the spray are evaporated. The steam and dry particles are carried upward by heated air and are induced to separate and drop into chambers surrounding the central shaft. The sides of the said chamber or gallery are made of gauze permitting the air and vapors to pass off and escape while the dry powder falls down and is collected in hoppers, whence it can be removed by any convenient apparatus.

Without discussing unnecessary details, it may be stated generally that a process for converting milk from a liquid to a dry powder had long been sought and many efforts were made to accomplish this result, but with very indifferent success. Stauf succeeded where others failed and now the powdered milk is sold everywhere and is used with success where fresh milk is not obtainable. None of the prior processes produced the desired result, so that the product could be used commercially as a substitute for milk. Many experimenters conceived the idea of a dry powder which could be converted into milk but no one succeeded in making a commercial article. Stauf has succeeded in producing a dry powder which can be converted into milk, having all the characteristics of milk as it comes from the cow. There were numerous attempts to reach this result but no one succeeded in solving the problem prior to Stauf. He has produced a powder which with the addition of water produces original fresh milk. Infringement is clearly shown. Stauf, being the first to solve the problem completely, is entitled to a liberal construction of the claim and we agree with Judge Hazel in thinking that:

"Except as to a few unimportant changes the apparatus of the defendant company for desiccating milk is not thought patentably different from complainant's."

As we agree with his conclusion, we do not deem it necessary to add to the discussion of this subject found in his opinion. The complainant is unquestionably entitled to an interpretation of the claim sufficiently broad to hold as infringers those who use equivalent processes. This the defendants clearly do.

[2] The defense of prior patenting in Germany is not established. The date of the American patent is January 29, 1901, and the proof falls far short of establishing the proposition that prior to that date the process was patented in Germany. The German patent did not issue, according to the law as understood in the United States, until

March 14, 1901, six weeks after the United States patent, which is dated January 29, 1901. That the "ausgegeben" date, which is the date when the title deed of the patent issues in Germany, must be considered as the date of the patent, is established by numerous authorities. In Edison Co. v. Waring Co. (C. C.) 59 Fed. 358, Judge Shipman said:

"This question was recently examined by Judge Jenkins in Telephone Co. v. Cushman [C. C.] 57 Fed. 842. He refers to the various decisions upon the question, and concludes that the invention is not patented abroad before the actual sealing and issuance of the patent, and that the term 'patented' as used in section 4887 of the Revised Statutes 'does not mean the preliminary proceedings, but the actual issuance of the patent under the seal of the government, speaking the exercise of sovereign will, investing the patentee with the grant of a monopoly.' In this conclusion I entirely concur."

See also Queen v. Friedlander (C. C.) 149 Fed. 775, where Judge Kohlsaat says:

"Under the patent laws of Germany, a patent when granted becomes operative from the day following the filing of the application. The publication or 'ausgegeben' date is the date upon which the patent is actually issued."

Certainly the invention was not patented as we understand that term. Even if the German law differs from ours, in this respect, it is clearly the duty of our courts to follow our own, rather than the German interpretation, of our laws.

The decree is affirmed with costs.