## BUFFALO FORGE CO. v. CITY OF BUFFALO et al.

(Circuit Court of Appeals, Second Circuit. December 11, 1918.)

No. 54.

1. PATENTS ⬅328—ANTICIPATION OR APPROXIMATION—HEATING AND HU-MIDIFYING AIR.

Neither anticipation of, nor close approximation to, plaintiff's method of heating and humidifying air, covered by Carrier patent, No. 854,270, claims 1, 3, 5, 6, and 7, *held* discoverable in the prior art.

2. PATENTS ⬅119—CLAIMS COVERING METHOD AND APPARATUS—DENIAL IN PART.

If Patent Office had granted claims both for a method of heating and humidifying air and apparatus to conduct the method, that fact would not have vitiated the patent, and, conversely, no more does the fact that it refused so to do, in the same patent at all events.

3. PATENTS ⬅328—METHOD OF HEATING AND HUMIDIFYING AIR—INFRINGE-MENT.

Carrier patent, No. 854,270, covering a method of heating and humidifying air, *held* infringed by the heating and humidifying apparatus of schools erected by defendant company in defendant city.

4. PATENTS ⬅157(2)—CONSTRUCTION—FIRST CO-ORDINATION OF PROCESS.

Where an inventor was the first to co-ordinate and disclose a series of operations constituting a method to heat and humidify air, and air moistened by such method was a successful novelty, his patent is entitled to benevolent construction.

5. PATENTS ⬅328—MECHANICAL PROCESS—METHOD OF HEATING AND HUMID-IFYING AIR.

Method of heating and humidifying air covered by Carrier patent, No. 854,270, claims 1, 3, 5, 6, and 7, a process involving only mechanical and not chemical operations, *held* a patentable and meritorious mechanical process.

6. PATENTS ⬅7—PROCESSES.

That the means, and the only means, of applying the process, are strictly mechanical, is of no moment, so far as patentability of the process is concerned; but if the process, when distinguished from the means of performing it, is new, useful, and intellectually rises to the dignity of invention, it is patentable, if it falls within the meaning of the word "art" as used in the statute.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Western District of New York.

Suit by the Buffalo Forge Company against the City of Buffalo and Thomas & Smith, Incorporated. From decree for complainant, defendants appeal. Affirmed.

Action is on claims 1, 3, 5, 6, and 7 of patent to Willis M. Carrier No. 854,270, granted May 21, 1907, for a "method of heating and humidifying air."

The patentee's stated purpose is to automatically regulate the temperature and humidity of fresh air especially in textile mills, and to do so "regardless of external atmospheric conditions within limits," by introducing "into the air, water at properly regulated temperatures below the boiling point."

The specification, which remained substantially unchanged through Patent Office criticism, consists of two easily separable parts: (1) A description in general terms of the process; and (2) an explanation of how the apparatus embodying the process and shown in the patent drawings should and would function. On this disclosure Carrier originally rested both method and apparatus claims. The latter he was ordered to make the subject of a separate application. This patent accordingly issued on the method claims only, and whether Carrier ever sought or obtained a patent on his disclosed apparatus is not shown by this record.

The patentee's description of his process is as follows:

"In carrying out the method forming the subject-matter of this invention, warm or hot water at a temperature above that of the air and below the boiling point is intimately mixed with a current of air, preferably by discharging the water into the air in a very fine spray or mist. The water raises the temperature of the air, which will therefore vaporize and assimilate an amount of the water depending upon the rise in temperature of the air so that its humidity is increased. A thermostat subject to the influence of the heated and humidified air controls means in the water supply system, whereby the water is maintained at the proper temperature to raise the temperature of the air to the degree required for the air to become saturated with an amount of vapor sufficient to give the desired absolute humidity to the air when raised to the temperature at which it is to be utilized. The free water is separated from the air current and is preferably collected, reheated and returned in the form of spray to the air, the same water with such additional amount as is necessary to maintain a constant volume of water being thus repeatedly circulated and used. Incidentally the air is thoroughly washed and cleansed, as the water sprayed into the air collects the solid particles of dust and foreign matter, which adhere to the free particles of water and are separated with the latter from the air."

Of the claims in suit the first is most general, and is as follows:

"1. The herein described method of humidifying air, consisting in causing an intimate contact of the air with water heated to a temperature above that of the air and below the boiling point, and automatically regulating the temperature of the water to maintain a practically constant temperature of the air, substantially as set forth."

The infringement alleged is embodied in the humidifying apparatus which is a part of the heating plants of two public schools in the city of Buffalo. These plants having been supplied to the city by the intervening defendants, they have assumed the burden of defense.

The District Court after overruling several defenses (some not now insisted on) found the patent valid and infringed; whereupon defendants took this appeal, urging in this court:

(1) Claims in suit are invalid on patents of the prior art; but

(2) If invention is disclosed it must reside only in the apparatus, which is not covered by this patent; but further

(3) Assuming validity, infringement is not proved; but, through all these contentions runs appellants' principal point, viz.:

(4) Carrier's method or process is nothing more than a description of the

functioning or operation of the apparatus he discloses, and it is therefore unpatentable.

William N. Cromwell, Lewis T. Greist, and Franklin M. Warden, all of Chicago, Ill. (John Taylor Booz, of Chicago, Ill., and William S. Rann and Frederick C. Rupp, both of Buffalo, N. Y., of counsel), for appellants.

Wilhelm & Parker, of Buffalo, N. Y. (Arthur E. Parsons, of Syracuse, N. Y., of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] 1. Study of Carrier's plan of operation (without naming it as a process or method) clearly differentiates the prior art relied on by defendants.[1] In the patentee's practice, air tempered (i. e., warmed if necessary) to 40°-45° F. is drawn from without a building into a spraying chamber, and there saturated (i. e., loaded with all the humidity it can carry) with or by means of water warm enough to raise the temperature to approximately 60° F. It then passes over or through an apparatus, usually of baffle-plates, which removes the free water particles carried by the air, and then passes a thermostat of predetermined range, by means of which if the temperature falls below an approximate 60° water of greater heat is provided, while a rise above said temperature will by thermostatic actuation cut off the hot water. By entirely separate heaters, the saturated air is further warmed (to say 70° F.) before passing into the room for which it is destined; such rise in temperature expands the air, and leaves any given cubic unit thereof with the prearranged relative humidity—because the vapor of saturation or dewpoint is distributed throughout whatever is the increased volume of a cubic unit of air saturated at (say) 60° F., and heated to (say) 70° F.

Thus what Carrier automatically controls is the temperature of saturation, upon which can be predicated with reasonable accuracy (i. e., "within limits") the relative humidity of the air supplied to the room of destination. In so far as the few prior patents relate to anything more than machines for spraying or washing air, they depend on hygrometric control of and through humidity, not on thermostatic control through the temperature at which saturation is effected; much less is there any prior showing of using a rise of temperature above that of saturation, to effect the desired relation of absolute and relative humidities. We agree with the court below that neither anticipation, nor close approximation, is discoverable in the prior art, so far as shown in this record.

[2] 2. Whether Carrier's disclosed apparatus reveals invention is a question not before us—and immaterial. If the office had granted claims for both method and apparatus, that fact would not have vi-

[1] Bradford 222,234; Huck 476,274; Carrier 808,897; Cramer 813,083; Cramer 821,989.

tiated the patent (Steinmetz v. Allen, 192 U. S. 543, 24 Sup. Ct. 416, 48 L. Ed. 555), and, conversely, no more does the fact that it refused so to do, in the same patent at all events. Carrier had much the same experience in the office as the patentee in Jackson v. Birmingham, etc., Co., 79 Fed. at page 805, 25 C. C. A. 196, whose patent we sustained. No process patent is in theory either helped or harmed by the excellence or worthlessness of the disclosed apparatus by which it is illustrated.

[3] 3. As for infringement, it is uncontradicted that the heating and humidifying apparatus of these Buffalo schools was erected in accordance with specifications, which in our opinion might have been taken from Carrier's application. We think it proven that defendants' device operates on exactly the principle above summarized, and that, on every material point of difference asserted by defendants, the evidence in rebuttal is destructive. This question of fact is sufficiently elaborated in the opinion below.

[4, 5] 4. It cannot be doubted that Carrier discloses and claims a connected series of steps or operations for accomplishing a physical result, and this is often a fair definition of what is protected by a good process patent. Furthermore, he was the first to co-ordinate and disclose this series of operations, and while his result, humidified air, was in a sense not new, air moistened by that method was a successful novelty. Therefore this patent is entitled to a construction as benevolent as that given by us to the desiccated milk process. Merrell, etc., Co. v. Powdered Milk Co. (D. C.) 215 Fed. 922, affirmed 222 Fed. 911, 138 C. C. A. 391.

We do not, however, resort to construction in aid of the claims in suit; for assuming now, as proved, an intelligible statement of process, novelty, and thought of the grade of invention, this patent presents acutely the problem stated by Justice Brown, in declaring that "it may be still regarded as an open question whether the patentability of processes extends beyond," those involving "a chemical or other similar elemental action," or can cover those necessarily involving mechanical operations.[2]

This query has been answered, with a fullness sufficient for the purposes of this litigation, by Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 Sup. Ct. 652, 53 L. Ed. 1034, holding that a process involving only mechanical operations might be within the protection of the statute.[3]

It is and always was true that the mere function or effect of the operation of a machine is not patentable; but, if a process be claimed

[2] Risdon, etc., Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745, 39 L. Ed. 899; Westinghouse v. Boyden, 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136.

[3] See comment on this case in Macomber's Fixed Law of Patents (2d Ed.) p. 1011; and a full discussion of the effect of the Risdon and Westinghouse opinions in "Patentable Processes," Harvard Law Review, vol. 19, p. 30. For a good illustration of how meritorious processes were fitted to the Risdon Case, before the Expanded Metal decision, see Cameron, etc., Co. v. Saratoga, 159 Fed. at pages 462, 463, 86 C. C. A. 483.

as a patentable art, the inquiry is vital whether the important thing disclosed is the method of procedure, or the particular means by which it shall or may be practiced.   Expanded Metal Case, 214 U. S. at page 381, 29 Sup. Ct. 652, 53 L. Ed. 1034.

If it is not reasonably possible to separate the alleged process from the disclosed means, the former can hardly be more than *the* function (or at least *a* function) of the latter.   This is no more than applying the doctrine of Leeds v. Victor, etc., Co., 213 U. S. at page 318, 29 Sup. Ct. at page 500, 53 L. Ed. 805:

"A process and an apparatus by which it is performed are distinct things. They may be found in one patent; they may be made the subject of different patents."

If such difference cannot be discovered, they cannot be two things; therefore they must be one thing, i. e., one invention, and that one is usually the means.

[6] But that the means, and the only means of applying the process, are strictly mechanical, is a matter of no moment, so far as patentability is concerned.   If the process, when distinguished from the means of performing it, is new, useful, and intellectually rises to the dignity of invention, it is patentable—if it falls within the meaning of the word "art" as used in the statute.

The patent in suit responds to these tests, and this litigation affords an excellent illustration of their propriety.   If Carrier had and were suing on a patent for the apparatus pictured and described in his specification, it is very doubtful whether the humidifying plants of these Buffalo schools would infringe; mechanically there is but little similarity.   But the series of steps by which "within limits" dry cold air is transformed into an automatically steady stream of humid warm air are, in our judgment and that of the trial court, identical. Where this is the case, it is plain that means and process are separable, and the important thing is the process.

For the foregoing reasons, we agree that Carrier's is a patentable and meritorious mechanical process, and direct that the decree appealed from be affirmed, with costs.