## CELANESE CORPORATION OF AMERICA v. RIBBON NARROW FABRICS CO., Inc.

### No. 105.

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1941.

Drury W. Cooper and Thomas J. Byrne, both of New York City, for appellant.

Samuel E. Darby, Jr., and Darby & Darby, all of New York City (Floyd H. Crews and William Davis, both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellant which owns patent No. 1,-773,967, for "Process of Cutting Fabric and Product Thereof" granted August 26, 1930, on the application of Camille Dreyfus filed October 5, 1927, sued the appellee in the District Court for the Southern District of New York for infringement of claims 6, 7, 8, 9, 11, 12, 16 and 17. The first five claims cover the process and the remaining three the product alleged to have been invented. All the claims were held invalid; the bill dismissed; and the plaintiff has appealed.

When fabrics made wholly or in part from yarns of derivatives of thermoplastic cellulose came into general use in the early twenties, difficulty was encountered in preventing the edges of such materials from raveling when cut because of the slippery nature of the cellulose. The plaintiff, organized in 1924 under the laws of Delaware, was a manufacturer of cellulose derivatives of which yarn of cellulose acetate was an important part and it was interested in solving the problem of fraying above mentioned. The use of adhesives for this purpose was not very satisfactory nor were solvents, for one reason or another, all that was wanted. By 1926 ribbons entirely or partly made of cellulose acetate yarn were in demand and the best way to make them was to cut wide pieces of the material into strips of whatever width was desired. This method of making ribbons left them with cut edges which frayed easily and that called for correction.

Mr. Dreyfus, who was the president of the plaintiff corporation, suggested to those in his organization who were working on the problem the use of heat sufficient to fuse the ends of the cellulose acetate threads when they were cut. This proved satisfactory and application was made for the patent in suit. It dealt with more than the use of heat and was broadly directed to the avoidance of fraying at the edges of cut fabrics "made in whole or in part of a material that can be fused by the action of heat, or can be dissolved by a solvent, or can be softened by a softening agent" like thermoplastic compounds of cellulose or organic derivatives of cellulose such as esters and ethers. He mentioned as mixed fabrics of the kind suitable to be cut in the patented way those made of cellulose acetate in combination with natural silk, or cotton, or wool of any desired construction.

He stated three alternative methods for the prevention of fraying at the cut edges of such fabrics and described each. As might be inferred from the above description of the usable material, they aimed to gain the required sticking together of the thread ends by dissolving the cellulose

derivative partially; or by softening it enough; or by melting it; and in each instance the edges would be sealed when the action of whatever was applied was complete. It was said that the cutting could be "into any desired configuration by means of knives or other cutting means which may be either hot or cold." And also that when hot cutting was done the "temperature of the cutting device should preferably be sufficiently high to melt the freshly made edge but not so high as to melt any of the material appreciably distant from the edge, since if too much material is melted, the edge so made will be of irregular thickness due to the formation of globules of molten material." One form of hot cutter suggested was an electrically heated blade though he included "any other suitable devices" and said in addition that "the sealing may be further completed when the cutting is done by a hot knife, or it may be done entirely when the cutting is done with a cold knife or mechanism, by fusing the cut edges by passing the same along a hot surface maintained at the temperature above indicated, or even by the use of a flame. Obviously any other method of fusing the cut edge of the strip or ribbon may be used."

From the above it is clear that the patentee did not describe his invention merely as the cutting of fusible material with a heated cutter. So much was old. Cameron, in his patent No. 1,445,992 granted February 20, 1923, disclosed the hot cutting means heated to the melting point of the material to be cut into strips to avoid torn or jagged edges. He was not concerned directly, however, with a tendency of his material to ravel as his machine was designed to cut sheets of rubber or of like material. Small and Dickie in patent No. 1,637,715 granted August 2, 1927 on an application filed April 7, 1923, also made use of a heated cutter for splitting into sheets blocks of "plastic materials consisting of or having a basis of cellulose acetate" and the like.

Just as any invention Dreyfus made in respect to the fusing of the edges necessarily has to be broader in scope than the use of a hot cutter, so does his alternative method of heat application after cutting have to be more than merely the use of melting heat. Fargo's patent No. 1,437,505 granted December 5, 1922, shows the application of heat by means of a torch to the edges of a stack of blanks cut from artificial leather or woven fabric coated with a composition of cellulose or pyroxylin which has gone well into the woven material to "fuse and seal the raw sheared ends of the fabric." Fargo's specifications plainly taught that woven material which would be thoroughly impregnated with cellulose acetate could, when cut, have its edges fused and so sealed by the application of heat.

We find in the record no use before Dreyfus of the application of heat to the cut edges of material made wholly or partially of fusible threads to prevent fraying and by disclaimer filed since the trial all his claims have been so limited. Sponholz did show that in his patent No. 1,709,887 granted April 23, 1929, on his application filed November 23, 1926, but the plaintiff proved and the court found that Dreyfus "completed his invention some time in September 1926," and there was no proof that Sponholz was entitled to a date of invention earlier than his filing date. Sponholz had previously applied for a German patent on May 11, 1926, but that is immaterial as there is no proof of any German patent or published printed description of the same subject matter prior to Dreyfus. 35 U.S.C.A. Sec. 32; Merrell-Soule Co. v. Powdered Milk Co. of America, 2 Cir., 222 F. 911.

Nevertheless Dreyfus could take but a small step in advance of the prior art in heating the cut edges of fabric made of some fusible material to seal them. If sealed they were reasonably well protected from fraying and it was no inventive step beyond Fargo to fuse the cellulose acetate present in the form of threads of that material when he had fused it in the same way when present as a coating or the impregnating agent of threads of another material. There was, if possible, even less of a departure from the prior art in the application of heat to the mixed fabrics of Dreyfus since Fargo's fabric was in that general class. It has been earnestly argued that the proof shows that Fargo's disclosure was not workable but the trial court did not so find and there seems to be no adequate reason for taking that as established. Fargo applied his heat by using a flame to melt the fusible part and singe off the remainder. Dreyfus made no distinction in his specifications between the fusing of the edges of fabric wholly of cellulose acetate and that made of a mixture with natural silk, cotton or wool and one way he

said the cut edges could be fused was "by the use of a flame." Even confining the claims covering this method to the fusing of the edges of material the liquefiable part of which is in the form of yarns, threads or filaments in accordance with the disclaimer there was no disclosure of any new process and none to be claimed. Advantage was merely taken of the well known fact that cellulose acetate would become sticky when heated to its melting point and would harden when cooled to hold together that to which it had adhered and the result was accomplished entirely in ways well disclosed in the prior art. It follows as a matter of course that as the application of fusing heat was old and no new way to apply it was disclosed by Dreyfus all his process claims are also invalid for lack of invention.

As the claims are, in our opinion, all invalid for the reasons given, we have not considered additional grounds of invalidity which were urged in support of the decree.

Affirmed.